MONROE, J.
John B. Pigniolo and Marco Popovich purchased from the city of New Orleans certain tracts of land in the parish of Plaquemines, which they divided between them; Popovich taking, among others, a tract measuring 1,117 feet 6 inches front on the Mississippi river, and Pigniolo taking an adjoining tract, lower down, measuring about 2 arpents front on the river. On September 3, 1881, Popovich sold to Dr. Rabasse a portion of the tract so acquired by him, by the following description:
“A certain tract of land * * * measuring 982 feet 6 inches front on the Mississippi river, * * * bounded above by the land of J. Johnson and below by the land of M. Popovich (the present vendor), and being 135 feet from the tract of land purchased by J. B. Pigniolo from the city of New Orleans. * * * The said tract of land is comprised w’ithin the lines E, F, G, G, H, and H, E, and, the side lines bearing S. 72° W.; -the whole, according to a sketch, paraphed ne varietur by the par *163 ties to this act, and by me, notary, to identify same with present act, and hereto annexed for future reference.”
John B. Pigniolo died, and his son, Joseph R. Pigniolo (defendant herein), acquired the two-arpent tract above referred to; and Dr. Rabasse died, and Vaccaro acquired the tract that he had bought from Popovich, and which, in the sale to him (Vaccaro), is described as “measuring 982 feet 6 inches front on the Mississippi river, * * * bounded above by the lands of J. Johnson and below by the lands of Popovich;” etc. Thereafter, in 1908, Joseph R. Pigniolo bought from Popovich the tract having 135 feet front, referred to in the sale from Popovich to Rabasse, and a few months later brought an action in boundary against Vaccaro, who answered, in effect, as follows:
“Defendant admits the purchase of Joseph Pigniolo from Marco Popovich, and joins plaintiff in the allegation that said purchase was made as per plot or plan annexed to an act of sale No. 68, dated September 3, 1881, and which plot or plan is annexed to plaintiff’s petition and made part thereof. Defendant, further answering, alleges that the boundary line between the land of defendant and Marco Popovich, the vendor from whom plaintiff purchased the land in question, has been established and still exists, and plaintiff is now aware of their [its] existence and was aware of their [its] existence at the time that he purchased the land in question from Marco Popovich. Defendant specially denies that he is in possession of any land formerly belonging to Marco Popovich and now belonging to plaintiff, Joseph Pigniolo, by virtue of his (plaintiff’s) one dollár purchase.”
Upon the issues thus presented, the case was tried, and a judicial survey having been ordered and made in the presence of the litigants, and it having been thereby .ascertained that Vaccaro was occupying a strip of land having some 26 feet of the' 135 feet front, constituting the tract that Pigniolo had purchased, there was judgment for Pigniolo, from which Vaccaro failed to prosecute an appeal. He, however, brought this suit, in which he alleges that, by the judgment referred to, the boundary between his lánd and that of Pigniolo
—“was declared to be about 26 feet inside petitioners’ former boundary line; * * * that said parcel of land was a part of a certain tract of land acquired by petitioner by purchase from the succession of * * * Rabasse; * * * that said * * * Rabasse acquired * * * by purchase from * * * Popovich and * * * Pigniolo, who acquired from the city of New Orleans; * * • that, at the time of the purchase by * * * Raba'sse, his vendors were residing in the parish of Plaquemines, on land adjoining the property in question, which was acquired and taken possession of by said Rabasse; that during its occupancy by said Rabasse a fence existed dividing the property taken possession of by Rabasse, under his purchase from Popovich and Pigniolo, from the property occupied by his said vendors; that some orange trees were on the division line betwen the said pieces of property, and it is of record that said Rabasse and his said vendors were dividing the fruits of the trees; * * * that petitioner bought s= * * jn pursuance of an order * * * in the succession of * * * Rabasse, and, upon taking possession * * * found the division line between his property and that of Popovich and Pigniolo consisted of a fence and said orange trees; that he took possession of said property with the full knowledge of his aforesaid neighbors, who at no time attacked, by word of mouth or otherwise, his right to do so.”
And be further alleges that he thereafter constructed and improved a canal on the 26-foot strip of land in question at a cost of $500, and planted other orange trees thereon and on said line, and that he is entitled to reimbursement on those accounts in the sum of $1,325, and to an injunction restraining Pigniolo from going into possession of said strip until said amount is paid, as, also, to a recognition of his lien upon the land therefor and an order for its sale in satisfaction thereof. And a preliminary injunction was issued accordingly.
The petition does not correctly state the facts. The 26-foot tract, of which the judgment in the boundary suit decreed Pigniolo to be the owner, .was never part of the tract acquired by Vaccaro from the succession of Rabasse, and Dr. Rabasse did not acquire *165 the tract which Vaecaro bought from ' his succession from Popovich and Pigniolo. He acquired it from Popovich. Nor does it appear that at the date of the purchase by Dr. Rabasse Popovich was residing “on land adjoining the property in question.” The 26-foot strip was part of the 135-foot tract which, in the sale from Popovich to Rabasse, is referred to as bounding the land sold on the lower side, and intervening between said land and that owned by John B. Pigniolo, and our conclusion from the testimony is that, as Popovich lived in New Orleans, some 62 miles from the locus in quo, John B. Pigniolo and Dr. Rabasse occupied his 135-foot tract, which separated their holdings, to suit themselves — Pigniolo up to a certain fence, and Rabasse down to the same fence • — and that they divided between them the orange crops from the trees which grew along the fence, which fence was some 26 feet below the line dividing said tract from that which Rabasse had bought from Popovich, and some 109 feet above the line which divided said tract from the 2-arpent tract which Pigniolo owned and lived on. And matters so continued after John B. Pigniolo died and his son, Joseph R. Pigniolo (defendant), acquired the interests of his coheirs in the 2-arpent tract which his father had owned, and after Vaecaro had acquired from’ the succession of Rabasse the tract which Rabasse had acquired from Popovich. Rabasse, as we have seen, acquired according to a plat of survey and a description which could leave no doubt as to his boundary. Vaecaro acquired according to a description which gave him 982 feet 6 inches front, and informed him that he was bounded above by Johnson and below by Popovich, and he admits that defendant acquired the 135-foot tract which separated his holding from the 2-arpent tract originally held by John B. Pigniolo. When, therefore, as appeárs from the evidence, he took possession down to the fence, upon the other side of which he found Pigniolo in possession, he did so in the face of the calls of his title and of the title of his author, which distinctly informed him that the land which he had purchased was bounded on the lower side by that of Popovich, and was separated from that of Pigniolo by a tract having a front of 135 feet on the river. The proposition that, under such circumstances, he was a possessor in good faith, because he chose, in the absence of Popovich, to take possession up to a fence, beyond which Pigniolo was in possession, is wholly untenable, since Pigniolo’s upper line was not his lower line, but was separated from it by a tract 135 feet wide that belonged to Popovich, and was given in his (plaintiff’s) title as his lower boundary. There was judgment in the district court in favor of defendant; but it was reversed in the Court of Appeal, which gave judgment for plaintiff, awarding him a certain amount by way of reimbursement for money expended, as set forth in his petition. It is clear, however, that, as a matter of law, he was a possessor in bad faith, and can recover nothing for improvements which are inseparable from the soil, or from the enhanced value of the land resulting therefrom. Voiers v. Atkins Bros., 113 La. 303, 36 South. 974; Lisso & Bros. v. Unknown Owner, 114 La. 398, 38 South. 282; Wood v. Monteleone, 118 La. 1011, 43 South. 657; Quaker Realty Co. v. Bradbury, 123 La. 20, 48 South. 570.
It is therefore ordered, adjudged, and decreed that the judgment of the Court of Appeal here made the subject of review be annulled, avoided, and reversed, and that the judgment of the district court be affirmed. All at the cost of the plaintiff.